**Amaad OSUMAN, Petitioner**

v.

**John ASHCROFT, United States Attorney General**

No. 01–2206.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 10, 2002.

Filed June 19, 2002.

Before SLOVITER, ROTH, and McKEE, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Amaad Osuman, a native of Burkino Faso, a country in Africa adjacent to Ghana, arrived in this country without valid entry documents. He sought relief from removal in the form of asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment (CAT or Convention). The immigration judge (IJ) denied the requested relief and the Board of Immigration Appeals (BIA or Board) summarily affirmed the IJ's denial of relief. Osuman petitions for review.

I.

FACTS AND PROCEDURAL BACKGROUND

Osuman lived on an extensive plot of farmland in Burkina Faso, owned by his father and adjacent to the land of Damba Grushie, the chief of the village and an elder. Osuman has said that Grushie has no connections to the government, but he also has said that the government is Grushie's boss.

According to Osuman's testimony, Grushie sought the land of Osuman's father for himself and his followers. On one occasion, sheep belonging to Osuman's father crossed into Grushie's land where they

damaged some of Grushie's crops. In retaliation, Grushie killed the sheep. When Osuman's father confronted Grushie about killing his sheep, Grushie threatened to kill anyone who questioned his actions. Shortly thereafter, on October 1, 1999, Grushie and his followers murdered Osuman's father, mother, and two sisters in their home. A witness to the murder told Osuman, who was working in the fields at the time, of the murders and Grushie's declared intent to murder Osuman, the inheritor of the land, as well.

Osuman went to the local police to report what happened and the police indicated that they would investigate but did not give Osuman any protection and do not appear to have made an arrest. Osuman went into hiding first in a nearby village and then in Ghana where he filed another police report against Grushie. After Osuman heard that Grushie's followers were looking for him in Ghana, he fled to the United States.

Osuman arrived on December 1, 1999 at Newark International Airport using a false passport and visa. Because he did not have valid entry documents, Osuman was taken into custody upon his arrival and charged as removable. He applied for relief from removal in the form of asylum, withholding of removal, and relief under the Convention Against Torture. The INS determined that Osuman presented sufficient evidence of a colorable fear of persecution to proceed to a hearing. At the hearing on August 18, 2000, the IJ issued an oral decision denying Osuman's applications for relief and ordering him removed.

The IJ noted that Osuman conceded that he was removable and described the burdens of proof for the relief sought. She summarized Osuman's testimony and noted that it was "skeletal in nature" and that his asylum application was "extremely lacking in any specific facts." App. at 9–10. She stated that there was no indication that Osuman was being persecuted for any political opinion, and that "there has been no testimony to support any nexus between any of the enumerated grounds and the bases for his claim for asylum." App. at 10. She concluded that the basis of his request for asylum was "primarily the result of a personal dispute" and that there was no evidence to prove that the government of Burkina Faso had any knowledge of Osuman or his family, or sought to persecute him or assist in his persecution. App. at 10. Having found that Osuman did not meet the burden of proof to support a grant of asylum, she did not need to reach the issue of withholding of removal, which has a higher standard of proof for the applicant to meet. App. at 11. She also rejected his claim for relief under the CAT "because of the same aforementioned reasons." App. at 11.

Osuman filed a notice of appeal to the BIA challenging the IJ's ruling. Together with his appeal, Osuman filed several written statements from witnesses in Burkina Faso and Ghana supporting his testimony. On April 10, 2001, the BIA issued a decision adopting the IJ's decision as its own, and stated that the additional evidence was not properly before it because the evidence had not been submitted to the IJ, and further, that remand was not necessary because the documents would not have affected the IJ's ruling even had they been submitted earlier.[1]

Osuman has remained in custody ever since his arrival over two years ago. He prepared a pro se petition for review received by this court on May 14, 2001. According to the proof of service, Osuman presented his petition to prison staff for mailing on May 7, 2001. The government filed a motion to dismiss on the ground that this court lacks jurisdiction because

---

1. There is some discrepancy as to the admissibility of these documents. We note only that

our conclusion remains the same regardless of whether we consider these documents.

Osuman's petition was untimely.[2] On July 3, 2001, we granted a stay of removal. Our jurisdiction arises under 8 U.S.C. 1252.

## II.

## STANDARD OF REVIEW

We must sustain the BIA's determination if there is substantial evidence in the record to support it. Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir.2001). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir.1998) (quotation omitted). Under this deferential standard, "the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille, 242 F.3d at 483–84 (citing INS v. Elias–Zacarias, 502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). Because the BIA stated that it adopted the IJ's ruling for the reasons set forth therein, and did not provide an independent analysis of the facts, we review the decision of the IJ as if it were the decision of the BIA. Abdulai v. Ashcroft, 239 F.3d 542, 549 n. 2 (3d Cir.2001).

## III.

## DISCUSSION

■ Osuman argues that substantial evidence does not support the IJ's ruling to deny relief. To qualify for asylum, a petitioner must be unwilling to return to his or her country of nationality "because of persecution or a well-founded fear of persecu-

tion on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. 1101(a)(42)(A). The fear must be both subjective and "supported by objective evidence that persecution is a reasonable possibility." Lin v. INS, 238 F.3d 239, 244 (3d Cir.2001) (quotation omitted). To qualify for withholding of removal, the petitioner must show that her "life or freedom would be threatened" because of the same categories identified for asylum. 8 U.S.C. 1231(b)(3)(A).

Osuman argues that he qualifies for asylum based both on his membership in a particular social group, his nuclear family, and because of his political opinion, though he concedes that the latter is the weaker argument. Appellant's Br. at 36. We conclude that Osuman has not proven either ground. Osuman has not shown how any opinion he holds that Grushie should not have his family's land represents a political opinion. We further conclude that Osuman has not shown that he faces persecution based on his membership in a particular social group. In Fatin v. INS, we stated that we were bound to accept the BIA's ruling that "kinship ties" qualify as a particular social group. 12 F.3d 1233, 1239–40 (3d Cir.1993) (quoting In re Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985)). Although other circuits have explicitly held that asylum can be based on membership in a nuclear family, those cases all presented factual scenarios in which the petitioner faced persecution based on her familial relationship with a person who was persecuted because of a political opinion. See Lwin v. INS, 144 F.3d 505 (7th Cir.1998) (stating that petitioner feared persecution

---

**2.** The government has since decided not to pursue this argument. Government's Br. at 17–18. It concedes that a pro se prisoner's notice of appeal is filed at the moment of delivery to prison authorities for mailing, and not upon receipt by the court. Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); Burns v. Morton, 134 F.3d 109, 112 (3d Cir.1998). The government does not concede that Osuman has proven the date of delivery.

The only proof of the timeliness of Osuman's delivery of the petition to prison authorities for mailing is the date on the proof of service, May 7, 2002, within the thirty–day limit. Because there is no evidence to indicate that Osuman turned his petition over for mailing on any other date, we conclude that the petition was timely filed and that we have jurisdiction.

based on his son's participation in pro-democracy movements); *Iliev v. INS*, 127 F.3d 638, 642 (7th Cir.1997) (denying asylum to petitioner who alleged persecution based on his family's pro-democracy activities); *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir.1993) (noting that petitioner faced persecution on account of his brother's religious and political persecution).

Although the alleged threat on Osuman's life is a product of his familial relationship, we do not believe this ground for asylum is appropriately extended to these facts, which are void of evidence that Grushie had anything more than a personal dispute with Osuman's family. See *Molina–Morales v. INS*, 237 F.3d 1048, 1052 (9th Cir.2001) ("[P]urely personal retribution is, of course, not persecution on account of political opinion.") (citation omitted). The IJ's decision implicitly rejected this ground as she stated that "there has been no testimony to support any nexus between any of the enumerated grounds and the bases for his claim for asylum in the United States." App. at 10.[3]

█ The Convention Against Torture prohibits the government from removing an alien to a country where torture will occur. 8 C.F.R. 208.16(d)(1) (2001). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. 208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. 208.18(a)(7).

Osuman contends that the IJ improperly dismissed this claim without giving it any independent consideration. The IJ stated that "because of the same aforementioned reasons [for denying asylum], I find he has not met his burden of proof to support the alternative relief under the Convention Against Torture." App. at 11. Despite this summary conclusion, we conclude that the IJ's analysis did address the reasons for Osuman's failure to qualify for this relief. The IJ set forth in detail the immigrant's burden of proof under the CAT, one necessary element of which is that the torture be inflicted by a public official or person acting in an official capacity. Osuman presented no proof that Grushie was a public official or acted in an official capacity. App. at 10.[4]

## IV.

## CONCLUSION

For the reasons set forth herein, we will deny the petition for review.

**Kathy D. KIDD, Appellant**

v.

---

3. Nor has Osuman proven that Grushie is a government actor or that the police were unwilling or unable to control Grushie, and we see no evidence to compel a contrary conclusion than that of the IJ that the government had no interest in permitting the persecution of Osuman.

4. The cases Osuman cites in favor of remand arose under different circumstances. In *Mansour v. INS*, 230 F.3d 902 (7th Cir.2000), the court remanded in part because the BIA made a factual mistake. *Id.* at 908 (stating that BIA referred to him as a "Syrian Christian" and not as an "Assyrian Christian"). The BIA need only "consider the issues raised, and announce its decision in terms sufficient to enanble a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* (quotation omitted). In *Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir.2001), the court remanded the CAT claim because the BIA placed too little emphasis on the country conditions, an issue that is not a concern in this case.